# United States Court of Appeals for the Federal Circuit

2009-7006

DAVID L. HENDERSON,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Thomas W. Stoever, Jr., Arnold & Porter LLP, of Denver, Colorado, argued for claimant-appellant. With him on the brief was Jacek Wypych.

Todd M. Hughes, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Michael F. Hertz, Acting Assistant Attorney General, and Jeanne E. Davidson, Director. Of counsel were David J. Barrans, Deputy Assistant General Counsel, and Ethan G. Kalett, Attorney, United States Department of Veterans Affairs, Office of the General Counsel, of Washington, DC.

Martin V. Totaro, Baker Botts L.L.P., of Washington, DC, argued for amicus curiae Allan G. Halseth. With him on the brief was Jeffrey A. Lamken.

Robert V. Chisholm, Chisholm, Chisholm & Kilpatrick, of Providence, Rhode Island, for amicus curiae Disabled American Veterans, on petition for rehearing en banc. Of counsel on the brief were Zachary M. Stolz, of Washington, DC; and Christopher Clay, Disabled American Veterans, of Washington, DC.

Linda E. Blauhut, Paralyzed Veterans of America, of Washington, DC, for amicus curiae Paralyzed Veterans of America and Jewish War Veterans of the United States of America, on petition for rehearing en banc. With her on the brief were William S. Mailander, General Counsel, and Michael P. Horan, Deputy General Counsel.

Todd M. Wesche, Goodman, Allen & Filetti, PLLC, of Richmond, Virginia, for amicus curiae National Organization of Veterans' Advocates, Inc., on petition for rehearing en banc.

Lara C. Kelley, Finnegan, Henderson, Farabow, Garrett & Dunner LLP, of Washington, DC, for amicus curiae United Spinal Association, on petition for rehearing en banc. With her on the brief was James F. Sheerwood. Of counsel on the brief was Barton F. Stichman, National Veterans Legal Services Program, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Chief Judge William P. Greene, Jr.

# United States Court of Appeals for the Federal Circuit

2009-7006

DAVID L. HENDERSON,

                                        Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

                                        Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in 05-0090, Chief Judge William P. Greene, Jr.

---

DECIDED:  December 17, 2009

---

Before MICHEL, <u>Chief Judge</u>, NEWMAN, MAYER, LOURIE, RADER, SCHALL, BRYSON, GAJARSA, LINN, DYK, PROST, and MOORE, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> SCHALL, in which <u>Circuit Judges</u> LOURIE, RADER, BRYSON, GAJARSA, LINN, DYK, PROST, and MOORE join.  Concurring opinion filed by <u>Circuit Judge</u> DYK, in which <u>Circuit Judges</u> GAJARSA and MOORE join. Dissenting opinion filed by <u>Circuit Judge</u> MAYER, in which <u>Chief Judge</u> MICHEL and <u>Circuit Judge</u> NEWMAN join.

SCHALL, <u>Circuit Judge</u>.

        This is a veterans case.  It involves 38 U.S.C. § 7266(a).  Pursuant to that statute, a veteran may appeal a final decision of the Board of Veterans' Appeals ("Board") to the United States Court of Appeals for Veterans Claims ("Veterans Court") within 120 days after the date on which notice of the Board's decision is mailed.  In this case, veteran David L. Henderson appeals the decision of the Veterans Court which

dismissed his appeal of an adverse Board decision for lack of jurisdiction, on the ground that the appeal was untimely. Henderson v. Peake, 22 Vet. App. 217 (2008). In arriving at its decision, the court held that the 120-day appeal period set forth in § 7266(a) is not subject to equitable tolling. It was the view of the Veterans Court that the decision of the Supreme Court in Bowles v. Russell, 551 U.S. 205 (2007), had abrogated the decision of this court in Bailey v. West, 160 F.3d 1360 (Fed. Cir. 1998) (en banc). In Bailey, we held that § 7266(a) is subject to equitable tolling. Following argument before a panel, we decided to rehear Mr. Henderson's appeal en banc, in order to determine whether, in light of Bowles, we should overrule Bailey and Jaquay v. Principi, 304 F.3d 1276 (Fed. Cir. 2002) (en banc). In Jaquay, we followed Bailey and held that the misfiling of a motion for reconsideration before the Board equitably tolls the period for filing a notice of appeal with the Veterans Court. Today, for the reasons set forth below, based on Bowles, we expressly overrule Bailey and Jaquay's holdings that the time period set forth in § 7266(a) is subject to equitable tolling. We therefore affirm the decision of the Veterans Court dismissing Mr. Henderson's appeal for lack of jurisdiction.

BACKGROUND

Mr. Henderson served on active military duty from 1950 to 1952. He was discharged in 1952 after being diagnosed with paranoid schizophrenia, for which he has established service connection and currently has a 100% disability rating. In August of 2001, Mr. Henderson filed a claim for monthly compensation with the Department of Veterans Affairs ("VA") Regional Office ("RO"), based on his need for in-home care. The RO denied the claim, and Mr. Henderson appealed to the Board. The appeal was

denied on August 30, 2004. Thereafter, on January 12, 2005, Mr. Henderson filed a notice of appeal with the Veterans Court, fifteen days after the expiration of the 120-day appeal period set forth in 38 U.S.C. § 7266(a). Section 7266(a) provides as follows:

> In order to obtain review by the Court of Appeals for Veterans Claims of a final decision of the Board of Veterans' Appeals, a person adversely affected by such decision shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed pursuant to section 7104(e) of this title.[1]

In 2005, the Veterans Court entered two orders asking Mr. Henderson to explain why his appeal should not be dismissed as untimely. Mr. Henderson responded that his failure to timely appeal was a direct result of his illness, and he asked that the court allow for equitable tolling in light of Bailey.

In March of 2006, in a single-judge decision, the Veterans Court held that equitable tolling was inappropriate in Mr. Henderson's case, and dismissed his appeal as untimely. Subsequently, however, the court appointed pro bono representation to Mr. Henderson and revoked its initial order, reassigning the appeal to a panel. While Mr. Henderson's appeal was pending, the Supreme Court rendered its decision in Bowles, in which it stated that "the timely filing of a notice of appeal in a civil case is a jurisdictional requirement," and thus cannot be waived. 551 U.S. at 214. The Court also stated that it had "no authority to create equitable exceptions to jurisdictional requirements." Id. The Veterans Court requested additional briefing on whether Bowles had abrogated our en banc decision in Bailey.

---

[1] In pertinent part, § 7104(e) of Title 38 provides:

> (e)(1) After reaching a decision on a case, the Board shall promptly mail a copy of its written decision to the claimant at the last known address of the claimant.

On July 24, 2008, the Veterans Court ruled in a 2–1 decision that the holding in Bowles prohibited it from using equitable tolling to extend the 120-day appeal period set forth in § 7266(a). Henderson, 22 Vet. App. at 221. The court determined that Congress had "specifically authorized" it to conduct "independent judicial appellate review" of the Board, and that well-settled law established that its cases were "civil actions." Id. at 220. Starting from that premise, the court concluded that § 7266(a) was a notice of appeal provision in a civil case, and that it was jurisdictional and could not be equitably tolled. Id. at 220–21. Accordingly, the court ruled that our precedent in Bailey was effectively overruled, and it dismissed Mr. Henderson's appeal for lack of jurisdiction. See id. at 218–20 (discussing Bailey). Judge Schoelen dissented, stating that the majority had failed to explain how Bowles changed the analysis of the governmental waiver of sovereign immunity that the Federal Circuit undertook in Bailey and reaffirmed in Jaquay. Id. at 222 (Schoelen J., dissenting).

Mr. Henderson timely appealed to this court, and a panel heard oral argument on June 5, 2009. Recognizing that the case raised the question of whether Bowles requires or suggests that we overrule previous en banc holdings of our court, we granted rehearing en banc sua sponte on June 29, 2009. Henderson v. Shinseki, No. 2009-7006, 2009 WL 1845590 (Fed. Cir. June 29, 2009). The single question posed to the en banc court is this:

> Does the Supreme Court's decision in Bowles v. Russell, 127 S. Ct. 2360 (2007), require or suggest that this court should overrule its decisions in Bailey v. West, 160 F.3d 1360 (Fed. Cir. 1998) (en banc), and Jaquay v. Principi, 304 F.3d 1276 (Fed. Cir. 2002) (en banc), holding that 38 U.S.C. § 7266 is subject to equitable tolling?

DISCUSSION

I.

Under 38 U.S.C. § 7292(c), we have jurisdiction "to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof . . . and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." Pursuant to 38 U.S.C. § 7292(d)(1), we "decide all relevant questions of law, including interpreting constitutional and statutory provisions." However, absent a constitutional issue, we "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2). As we stated in Bailey, "[b]ecause our review of this decision involves a question of statutory interpretation—namely the ability of the [Veterans Court] to equitably toll a particular statutory time limit and thereby exercise jurisdiction over a late-filed notice of appeal—we have jurisdiction over this matter." 160 F.3d at 1362. The question of whether § 7266(a) is subject to equitable tolling is a question of law and is reviewed de novo. See id.; see also 38 U.S.C. § 7292(d)(2).

II.

A.

Before turning to the contentions of the parties and our analysis, we examine Bailey, Jaquay, and Bowles. In Bailey, veteran Harold Bailey sought service connection for a pulmonary disorder. After his claim was denied by the RO, Bailey appealed to the Board, which also denied his claim. Bailey, 160 F.3d at 1361. The Board mailed copies of its decision to Bailey and his representative on August 8, 1996. The Board's decision informed Bailey that, under 38 U.S.C. § 7266(a), he had 120 days to appeal to the

Veterans Court by filing a notice of appeal with the court at its address in Washington, D.C. Id.

Bailey filed his Notice of Appeal with the Veterans Court on January 25, 1997, after the expiration of the 120-day period specified in § 7266(a). Id. at 1361–62. Eventually, the Veterans Court dismissed the appeal for lack of jurisdiction, stating that equitable tolling was not available "to provide any relief in the case of an untimely filed [Notice of Appeal]." Id. at 1362. After Bailey appealed, we took the case en banc to determine whether the 120-day time period set forth in § 7266(a) is subject to equitable tolling.

The en banc court held that the time period in § 7266(a) is subject to equitable tolling. In so doing, the court "t[ook its] guidance" from Irwin v. Department of Veterans Affairs, 498 U.S. 89 (1990). Bailey, 160 F.3d at 1363. In that case, Shirley Irwin was fired from his job with the VA. Subsequently, he sought to bring a Title VII claim in district court after exhausting his remedies within the agency and before the Equal Employment Opportunity Commission ("EEOC"). 498 U.S. at 90–91. Section 2000e-16(c) of Title 42 provided at the time, as a statute of limitations, that a Title VII complaint had to be filed "within thirty days of receipt of notice of final action" by the EEOC.[2] Id. at 94. Although Irwin did not file his complaint in a timely fashion, he argued that equitable tolling should apply and excuse his delay. Id. at 91.

After the district court dismissed Irwin's complaint and the Fifth Circuit affirmed the dismissal, the Supreme Court granted certiorari. Deciding the case, the Court held that "the same rebuttable presumption of equitable tolling applicable to suits against

---

[2] In 1991, this time period was extended to ninety days. See Pub. L. No. 102-166, § 114(1), 105 Stat. 1071, 1079 (Nov. 21, 1991).

private defendants should also apply to suits against the United States." Id. at 95. The Court further held that equitable tolling should apply to 42 U.S.C. § 2000e-16(c), stating that the use of equitable tolling against the government did not improperly broaden Congress's statutory waiver of sovereign immunity.[3] Id. at 95–96.

In Bailey, we viewed § 7266(a) as a time of review provision, see 160 F.3d at 1365–66, but we declined to cabin Irwin to cases involving statutes of limitations. Id. We stated that the Supreme Court's opinion in Irwin did not "distinguish among the various kinds of time limitations that may act as conditions to the waivers of sovereign immunity required to permit a cause of action to be pitched against the United States." Id. at 1364. We further stated that the rule we drew from Irwin was that "the doctrine of equitable tolling, when available in comparable suits of private parties, is available in suits against the United States, unless Congress has expressed its intent to the contrary." Id. We concluded that there was "no reason to believe" that Congress wanted to bar the application of equitable tolling to § 7266(a). Id. at 1368.

The Bailey Court distinguished Stone v. Immigration & Naturalization Service, 514 U.S. 386 (1995), and Missouri v. Jenkins, 495 U.S. 33 (1990). In Stone, which involved a final deportation order of the Board of Immigration Appeals ("BIA"), the Supreme Court held that the time for filing a petition for review of the order with a circuit court of appeals was jurisdictional and thus could not be equitably tolled.[4] Although the

---

[3] The Court, however, found equitable tolling was inappropriate in Irwin's case.

[4] The text of 8 U.S.C. § 1105a(a)(1) (1994), the statute at issue in Stone, provided that "a petition for review [of a final deportation order] may be filed not later than 90 days after the date of the issuance of the final deportation order." The statute was repealed, effective April 1, 1997, by Pub. Law No. 104-208, Div. C, Title III, § 306(b), 110 Stat. 3009-612 (Sept. 30, 1996).

Stone Court stated that "statutory provisions specifying the time of review" are "mandatory and jurisdictional," 514 U.S. at 405, we said in Bailey that we did not think this language could "be read to mean that statutes specifying the time of review cannot be subject to equitable tolling because such statutes are mandatory and jurisdictional." Bailey, 160 F.3d at 1366. Rather, we said that we thought it reasonable to read this language to mean that "statutory provisions specifying the time for review are not subject to equitable tolling, after Irwin, if Congress has so expressed its intent." Id.

In Missouri v. Jenkins, the Supreme Court held that the ninety-day time limit for filing a petition for certiorari in a civil action, set forth in 28 U.S.C. § 2101(c), is not subject to equitable tolling.[5] 495 U.S. at 95. We stated in Bailey that we read Missouri v. Jenkins in light of Irwin to mean that time of review statutes cannot be equitably tolled where Congress has provided contrary intent. Bailey, 160 F.3d at 1367. We found that such intent was present in the case of § 2101(c) because Congress had added a sixty-day good cause exception to the ninety-day time limit in the statute. Id. Because Congress specifically included a good cause exception, we stated that Congress "expressed an intent to shield the statute from equitable tolling," and thus Missouri v. Jenkins and Irwin could be harmonized. Id. We concluded our discussion of Stone and Missouri v. Jenkins by stating: "We recognize that language in Stone and Missouri v. Jenkins can be read to draw a bright line which would place statutes of limitation on one

---

[5] Section 2101(c) of Title 28 provides:

Any other appeal or any writ of certiorari intended to bring any judgment or decree in a civil action, suit or proceeding before the Supreme Court for review shall be taken or applied for within ninety days after the entry of such judgment or decree. A justice of the Supreme Court, for good cause shown, may extend the time for applying for a writ of certiorari for a period not exceeding sixty days.

side of the Irwin presumption and statutes of timing of review on the other. We are not comfortable drawing that line . . . ." Id.

After analyzing § 7266(a), we concluded that the government had not rebutted the Irwin presumption, and that § 7266(a)'s time period was therefore subject to equitable tolling. In reaching this conclusion, we noted that Congress did not express contrary intent that would indicate equitable tolling should not apply. For example, in United States v. Brockamp, 519 U.S. 347, 350 (1997), we observed, the Supreme Court held that the statute of limitations in 26 U.S.C. § 6511 is not subject to equitable tolling because it is "set[] forth . . . in a highly detailed technical manner, that linguistically speaking, cannot easily be read as containing implicit exceptions."[6] Further, § 6511 expressly states exceptions to its time limits, and "equitable tolling" is not one of the exceptions enumerated. Id. at 352. We observed in addition that, in United States v. Beggerly, 524 U.S. 38 (1998), the Supreme Court found that Congress had rebutted the presumption of equitable tolling for 28 U.S.C. § 2409a because the statute provides for an "unusually generous" statute of limitations that "d[oes] not begin to run until the plaintiff 'knew or should have known of the claim of the United States.'"[7] 524 U.S. at 48–49. We determined that, unlike the statutes in Brockamp and Beggerly, § 7266(a) is neither highly technical nor generous, and does not provide for explicit exceptions to the limitations period it contains. Thus, we concluded that the appeal period in § 7266(a) is subject to equitable tolling, overruling prior precedent to the contrary. Bailey, 760 F.3d at 1368. Accordingly, we reversed the decision of the Veterans Court and remanded

---

[6] Section 6511 of Title 26 deals with the procedures for filing tax-refund claims.

[7] Section 2409a of Title 28 addresses procedures for bringing actions for quiet title where the United States is a party.

the case for a determination as to whether Bailey was entitled to the benefit of equitable tolling.

In concurrence, now-Chief Judge Michel wrote separately "because certain statements of our court about certain comments in <u>Irwin</u> could be read to suggest a broader application of <u>Irwin</u> to other tribunals . . . ." <u>Bailey</u>, 160 F.3d at 1368 (Michel, J., concurring). The concurrence focused on the "unique, paternalistic administrative environment" of the Veterans Court, and noted that "disputes that arise in this system are subject to procedural and other rules that are distinctly advantageous to the veteran claimant." <u>Id.</u> at 1368–69. Because Judge Michel could find no possibility for "comparable suits of private parties" in the veterans context, he reasoned that the holding in <u>Irwin</u> was inapplicable. <u>Id.</u> at 1370. The concurrence nonetheless concluded that equitable tolling of § 7266(a)'s 120-day period was appropriate because the "entire scheme is imbued with special beneficence from a grateful sovereign." <u>Id.</u> at 1370.

Dissenting, Judge Bryson pointed out that the Federal Circuit had "previously characterized compliance with the 120-day appeal period in 38 U.S.C. § 7266(a) as 'a prerequisite for jurisdiction in the [Veterans Court],'" and that consequently the court had held that the 120-day period was not subject to extension upon a showing of good cause. <u>Id.</u> According to the dissent, the question of whether § 7266(a) is subject to equitable tolling was controlled not by <u>Irwin</u>, but by <u>Stone</u>. <u>Id.</u> at 1372. The dissent drew the bright line the majority rejected, finding that while statutes of limitations are subject to the <u>Irwin</u> presumption of equitable tolling, "[p]eriods for filing notices of appeal are not normally regarded as statutes of limitations." <u>Id.</u> at 1371. "Instead, they are considered 'timing of review' provisions, which are typically deemed 'mandatory and

jurisdictional' and not subject to equitable tolling." Id. at 1371–72. The statute in Irwin, the dissent stated, was a statute of limitations because it commenced a civil suit in district court, and was not an appeal from any court or other body. Id. at 1372.

By contrast, the dissent stated, the statute in Stone specified the time for review of a decision of the BIA by a federal court of appeals. The dissent highlighted the following language from the Court's opinion in Stone, id.:

> Judicial review provisions . . . are jurisdictional in nature and must be construed with strict fidelity to their terms. . . . This is all the more true of statutory review provisions specifying the timing of review, for those time limits are, as we have often stated, "mandatory and jurisdictional," . . . and are not subject to equitable tolling.

Stone, 514 U.S. at 405. The dissent concluded that the appeal provision in Stone, 8 U.S.C. § 1105a(a)(1), paralleled § 7266(a), "in that both provide a fixed period of time within which an appeal may be taken to a reviewing court." Bailey, 160 F.3d at 1372. By contrast, the limitations period at issue in Irwin is not a provision for appellate review "because the action brought in district court is not a review of anything done by the EEOC, but an original discrimination action against the employer agency." Finally, the dissent reviewed the pertinent legislative history and determined that although it was "not conclusive," it too supported the conclusion that § 7266(a) is jurisdictional in nature and not subject to equitable tolling.

### B.

In Jaquay, the en banc court addressed the question of whether a misfiled motion asking for Board reconsideration "equitably tolled the judicial appeal period for filing [a] notice of appeal to the Veterans Court." 304 F.3d at 1278. Veteran Oliver Jaquay attempted to file a motion for reconsideration of a final Board decision, but incorrectly filed it with his RO. After ten months had elapsed, the RO forwarded the

motion to the Board, where it was denied. When Jaquay appealed the reconsideration decision to the Veterans Court (within 120 days of the denial), the Veterans Court granted the government's motion to dismiss because the notice of appeal was not filed within 120 days of the <u>initial</u> final Board decision. Further, the Veterans Court found tolling inappropriate under <u>Rosler v. Derwinski</u>, 1 Vet. App. 241, 249 (1991), where it had held that a motion for reconsideration filed with the Board within 120 days of the Board's final decision tolls the time required to file a notice of appeal with the Veterans Court until 120 days after the reconsideration decision. <u>Id.</u> We reversed, holding that Jaquay's misfiling equitably tolled the 120-day period for filing at the Veterans Court.

We noted that, in <u>Irwin</u>, the Supreme Court stated that equitable tolling is available (1) "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period," or (2) "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." <u>Irwin</u>, 498 U.S. at 96. We also noted that the Supreme Court had previously found equitable tolling appropriate where a plaintiff had "filed the correct complaint in the wrong court." <u>Jaquay</u>, 304 F.3d at 1285. We stated that, "[i]n the context of the non-adversarial, paternalistic, uniquely pro-claimant veterans' compensation system, and consistent with our decision in <u>Bailey</u>, the availability of equitable tolling pursuant to <u>Irwin</u> should be interpreted liberally with respect to filings during the non-adversarial stage of the veterans' benefits process." <u>Id.</u> at 1286. We thus held as a matter of law that "a veteran who seeks redress of a claim and misfiles his request at the same [RO] from which the claim originated" is entitled to equitable tolling under the first <u>Irwin</u> prong

"despite the defective filing" because he has "actively pursued his judicial remedies." Id. at 1288–89.

## C.

The Supreme Court decided Bowles in 2007, after Bailey and Jaquay were decided by this court. In Bowles, the Court sought to clarify the circumstances in which time limits have jurisdictional significance. In the case, Keith Bowles petitioned for habeas corpus relief from a murder conviction, after unsuccessfully challenging on direct appeal in state court both his conviction and sentence of fifteen years to life. 551 U.S. at 207. The district court in Ohio denied the petition, and Bowles failed to timely appeal. Id. Pursuant to 28 U.S.C. § 2107(c) and Federal Rule of Appellate Procedure 4(a)(6) ("Rule 4(a)(6)"), though, the district court exercised its right to extend the period for filing a notice of appeal.[8] Id. However, the court's order erroneously gave Bowles

---

[8]  Section 2107(c) of Title 28 provides:

(c) The district court may, upon motion filed not later than 30 days after the expiration of the time otherwise set for bringing appeal, extend the time for appeal upon a showing of excusable neglect or good cause. In addition, if the district court finds—

> (1) that a party entitled to notice of the entry of a judgment or order did not receive such notice from the clerk or any party within 21 days of its entry, and

> (2) that no party would be prejudiced,

the district court may, upon motion filed within 180 days after entry of the judgment or order or within 7 days after receipt of such notice, whichever is earlier, reopen the time for appeal for a period of 14 days from the date of entry of the order reopening the time for appeal.

Rule 4(a)(6) similarly provides:

seventeen days to file the notice of appeal, instead of the fourteen days allowed by the statute and the rule. Bowles filed his notice of appeal on the sixteenth day. Id. Before the United States Court of Appeals for the Sixth Circuit, Russell, the Warden who had custody of Bowles, argued that Bowles's notice of appeal was untimely and that the court therefore lacked jurisdiction to hear the case. The Sixth Circuit agreed and dismissed the appeal. Bowles v. Russell, 432 F.3d 668, 677 (6th Cir. 2005). Noting that Rule 4(a) had been interpreted as "both mandatory and jurisdictional" by the Supreme Court and the Sixth Circuit, id. at 673, the court held that the Rule was "not susceptible to extension through mistake, courtesy, or grace." Id. at 669.

The Supreme Court affirmed the decision of the Sixth Circuit. Focusing on 28 U.S.C. § 2107(c), the Court held that the statute was more than a "claim processing rule," Bowles, 551 U.S. at 213, and stated repeatedly that time limits for filing a notice of appeal are jurisdictional in nature. Id. at 206, 210–212. The Court stressed the fact that it had "long held that the taking of an appeal within the prescribed time is 'mandatory

---

**(6) Reopening the Time to File an Appeal.** The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, but only if all the following conditions are satisfied:

**(A)** the court finds that the moving party did not receive notice under Federal Rule of Civil Procedure 77(d) of the entry of the judgment or order sought to be appealed within 21 days after entry;

**(B)** the motion is filed within 180 days after the judgment or order is entered or within 7 days after the moving party receives notice under Federal Rule of Civil Procedure 77(d) of the entry, whichever is earlier; and

**(C)** the court finds that no party would be prejudiced.

and jurisdictional.'" Id. at 209. In addition, the Court emphasized that there is particular "jurisdictional significance" when the time limit is set forth statutorily, rather than through court-promulgated rules. Id. at 210–11. In that regard, the Court contrasted its treatment of Federal Rule of Bankruptcy Procedure 4004 ("Rule 4004"), which governs the filing deadline for a complaint objecting to a debtor's discharge, with 28 U.S.C. § 2101(c), which governs the filing deadline for a writ of certiorari in civil cases. In discussing Rule 4004, the Court recounted its decision in Kontrick v. Ryan, 540 U.S. 443 (2004). In Kontrick, the Court held that Rule 4004 was not jurisdictional. According to the Bowles Court, "[c]ritical to [the] analysis [in Kontrick] was the fact that 'no statute . . . specifies a time limit for filing a complaint objecting to the debtor's discharge.'" 551 U.S. at 211 (quoting Kontrick, 540 U.S. at 448). As only Congress can determine the jurisdiction of a lower federal court, the Court found it inappropriate to label rules such as Rule 4004 "jurisdictional." By contrast, referring to 28 U.S.C. § 2101(c), the Court stated: "We have repeatedly held that this statute-based filing period for civil cases is jurisdictional." Bowles, 551 U.S. at 212.

Continuing, the Court opined that "[j]urisdictional treatment of statutory time limits makes good sense." Id. at 212. "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider. Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them." Id. at 212–13. Because Congress specifically provided a limit on the number of days a court may extend the period in which to file a notice of appeal in 28 U.S.C. § 2107(c), the Court found that limit to be "more than a simple 'claim-processing rule,'" and thus jurisdictional. Id. at 213. The

Court stated: "Bowles' failure to file his notice of appeal in accordance with the statute therefore deprived the Court of Appeals of jurisdiction. And because Bowles' error is one of jurisdictional magnitude, he cannot rely on forfeiture or waiver to excuse his lack of compliance with the statute's time limitations." Id. In conclusion, the Court emphasized: "Today we make clear that the timely filing of a notice of appeal in a civil case is a jurisdictional requirement." Id. at 214. The Court added that it had "no authority to create equitable exceptions to jurisdictional requirements." Id. The Court thus affirmed the dismissal of Bowles's habeas appeal. Id. at 214–15.

III.

On appeal, Mr. Henderson, supported by various amici, makes several arguments as to why Bowles does not require us to overrule Bailey and Jaquay.[9] He first contends that 38 U.S.C. § 7266(a) is analogous to a statute of limitations rather than a jurisdictional time of review provision. Starting from that premise, he argues that the question of whether the 120-day filing period in § 7266(a) is subject to equitable tolling is governed by Irwin. Mr. Henderson urges that, in any event, the Bowles analysis should be limited to appeals in Article III courts, and should not be extended to cover appeals to the Article I Veterans Court. Finally, Mr. Henderson points to the unique pro-claimant, non-adversarial nature of proceedings before the RO and the Board. According to Mr. Henderson, the unique nature of veterans proceedings supports a reading of § 7266(a) that allows for equitable tolling.

---

[9] We received amicus curiae briefs from veteran Allan G. Halseth; Disabled American Veterans ("DAM"); National Organization of Veterans' Advocates, Inc. ("NOVA"); Paralyzed Veterans of America and the Jewish War Veterans of the United States of America ("PV/JWV"); and United Spinal Association ("United Spinal"), all urging reversal of the decision of the Veterans Court.

In arguing that § 7266(a) is analogous to a statute of limitations, rather than a time of review provision, and that Irwin therefore controls, Mr. Henderson points to Jaquay. There, we stated that "the filing of a notice of appeal at the Veterans Court, like the filing of a complaint in a trial court, is the first action taken by a veteran in a court of law." 304 F.3d at 1286. He also points to the statement in Jaquay that Bailey decided "whether the 120-day statute of limitations under 38 U.S.C. § 7266 was subject to the doctrine of equitable tolling." Appellant's Br. 19 (quoting Jaquay, 304 F.3d at 1283). According to Mr. Henderson, "[t]he rationale for these statements is simple: when a veteran files [a Notice of Appeal] in the Veterans Court, the veteran is commencing litigation against the United States, not pursuing an appeal from one Article III court to another." Id.

Mr. Henderson argues that the title of § 7266(a), "Notice of Appeal," does not change the fact that the statute constitutes a statute of limitations. Mr. Henderson reasons that although a case has been through several non-adversarial administrative proceedings when it reaches the Veterans Court, it has not yet been heard in a court of law. By contrast, an appeal from a district court to a circuit court of appeals already has been heard in one Article III court. See Bowles, 551 US at 208–09 (discussing the time limit for seeking review of an Article III court's decision in another Article III court). In other words, Mr. Henderson contends that § 7266(a) must be a statute of limitations because he "has not had a chance to engage the judicial machinery" before the time of his appeal to the Veterans Court. See En Banc Oral Arg., 14:19–14:22, Sept. 18, 2009.

According to Mr. Henderson, because § 7266(a) is analogous to a statute of limitations provision, the Irwin presumption in favor of equitable tolling applies. In that

regard, he argues that, as we determined in Bailey, there is no evidence of congressional intent to foreclose the application of equitable tolling to § 7266(a). Mr. Henderson posits that where Congress has written in exceptions to a time period set forth in a statute, as it did in 28 U.S.C. § 2107(c), then the specified time period cannot be equitably tolled. However, in the case of § 7266(a), no such exception was written in. Thus, Mr. Henderson contends that "equitable tolling is presumed to exist in the statute." Id. at 6:04–08. Relatedly, Mr. Henderson urges that the intent to provide for equitable tolling has been solidified in the past eleven years. In the period since Bailey, Congress has amended § 7266(a), and chosen not to specify that equitable tolling is unavailable, indicating to Mr. Henderson that Congress has acquiesced in the interpretation we gave the statute in Bailey.[10] Appellant's Reply Br. 9–10.

The government responds that 38 U.S.C. § 7266(a) constitutes a mandatory and jurisdictional time of review provision. It frames the issue by stating that "[a] statute governing the timing of an appeal is jurisdictional because it identifies the point at which the subject-matter jurisdiction of the lower court or tribunal ends and that of the appellate court begins." Appellee's Br. 11; see also Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) (per curiam) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.").

The government argues that, in view of Bowles, there can be no doubt that § 7266(a) is jurisdictional. The government notes that, in Bowles, the Supreme Court

---

[10] In 2001, Congress amended § 7266 as part of a broad package modifying the veterans' benefits system. See Veterans Education and Benefits Expansion Act of 2001, Pub. L. No. 107-103, § 507, 115 Stat. 976, 997.

stressed the fact that statutes specifying the time for taking an appeal in civil cases are jurisdictional. The government further notes that both this court and the Supreme Court have referred to proceedings in the Veterans Court as civil actions. See Scarborough v. Principi, 541 U.S. 401, 413 (2004); Abbs v. Principi, 237 F.3d 1342, 1348 (Fed. Cir. 2001). Additionally, the government points out, § 7266(a) refers to the filing in the Veterans Court as a "notice of appeal," indicating that the Veterans Court does not commence litigation, but rather continues litigation first brought before the Board. The government also points out that the Veterans Court cannot review fact findings de novo, 38 U.S.C. § 7261(c), and must apply the doctrine of harmless error. See Shinseki v. Sanders, 129 S. Ct. 1696, 1704 (2009) (holding that 38 U.S.C. § 7261(b)(2) requires the Veterans Court to apply the same kind of "harmless-error" rule that courts ordinarily apply in civil cases). In addition, the Veterans Court reviews each case that comes before it on a record that is limited to the record developed before the RO and the Board. 38 U.S.C. § 7252(a). The government argues that these requirements are characteristic of appellate courts, not courts or bodies where litigation is commenced, and that therefore it is inappropriate "to treat a veteran's appeal . . . like an 'initial' claim." Appellee's Br. 25. The government also argues that the legislative history does not support equitable tolling.

IV.

In Bowles, the Supreme Court "ma[d]e clear that the timely filing of a notice of appeal in a civil case is a jurisdictional requirement." Bowles, 551 U.S. at 214. The Court also made it clear that courts "ha[ve] no authority to create exceptions to jurisdictional requirements." Id. at 214. Only Congress may do that. Id. at 212–13.

("Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them."). We hold today that 38 U.S.C. § 7266(a) is a notice of appeal, or time of review, provision in a civil case. In line with Bowles, we further hold that because § 7266(a) is a time of review provision, it is jurisdictional and that because Congress has not so provided, the statute is not subject to equitable tolling.

A.

Preliminarily, we recognize that, as Mr. Henderson points out, we stated in Jaquay that "the filing of a notice of appeal at the Veterans Court, like the filing of a complaint in a trial court, is the first action taken by a veteran in a court of law." 304 F.3d at 1286. As he further points out, we also stated in Jaquay that Bailey decided "whether the 120-day statue of limitations under 38 U.S.C. § 7266 was subject to equitable tolling." Id. at 1283 (emphasis added). These statements do not alter our conclusion that § 7266(a) is a time of review provision.

We agree that Mr. Henderson's appeal to the Veterans Court represented the first time he could appear before a court. However, that was also the case for the litigant in Stone. Although Stone appeared solely within the executive system (namely, the BIA) before his petition to the circuit court of appeals, the Supreme Court still held that 8 U.S.C. § 1105a(a)(1) was mandatory and jurisdictional. Therefore, the fact that the Veterans Court is the first opportunity for a veteran to appear before a judicial body does not make § 7266(a) a statute of limitations rather than a time of review provision. More importantly, the statutory scheme convinces us that § 7266(a) is indeed a time of review provision.

Turning to the nature of proceedings in the Veterans Court, we begin by noting that both the Supreme Court and this court have labeled actions in the Veterans Court "civil actions." See Sanders, 129 S. Ct. at 1700 ("In these two civil cases, the Department of Veterans Affairs (VA) denied veterans' claims for disability benefits."); Scarborough v. Principi, 541 U.S. 401, 413 (2004) (labeling veterans actions "civil actions" for purposes of fees allowed by the Equal Access to Justice Act); Abbs v. Principi, 237 F.3d 1342, 1348 (Fed. Cir. 2001) (same). We hold that an appeal in the Veterans Court is a "civil case." See Bowles, 551 U.S. at 214.

We also hold that, because it speaks to "the timely filing of a notice of appeal," id., § 7266(a) is a time of review provision. First, the statute is titled "Notice of Appeal," and it states that a veteran "shall file a notice of appeal" "in order to obtain review" by the Veterans Court. 38 U.S.C. § 7266(a). This language plainly suggests that § 7266(a) is a time of review provision. Beyond that, § 7252(a) of Title 38 states that the Veterans Court "review[s] decisions of the Board of Veterans' Appeals," while § 7252(b) provides that a decision of the Veterans Court "shall be on the record of proceedings before the Secretary and the Board." Additionally, the Veterans Court reviews the fact findings of the Board under a clearly erroneous standard, 38 U.S.C. § 7261(b), and must consider the rule of prejudicial error, 38 U.S.C. § 7261(b)(2). These are characteristics of appellate review, rather than of an assessment of claims in the first instance. See, e.g., Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 464 (1988) (noting that it is among "the most basic principles of appellate review" that an appellate court not disturb findings of fact unless they are clearly in error) (citing Fed. R. Civ. P. 52(a) ("Findings of fact . . . shall not be set aside unless clearly

erroneous")); <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 395 U.S. 100, 123 (1969) ("appellate courts must constantly have in mind that their function is not to decide factual issues de novo."). As the Veterans Court stated in <u>Frankel v. Derwinski</u>, 1 Vet. App. 23, 25 (1990), "the primary purpose for creating the [Veterans Court] was to provide judicial <u>review</u> of [Board] decisions." The very fact that the Veterans Court can only affirm, reverse, modify, and remand decisions of the Board indicates that it is an appellate body, not a court where claims are commenced. <u>See</u> 38 U.S.C. § 7252(a). In contrast, a Title VII claim (like the one brought in <u>Irwin</u>) is a new civil action. While the district court will certainly consider many of the same facts and the same underlying conduct as the agency and the EEOC, the district court is free to make de novo fact findings and reach its own conclusions, unconstrained by the agency or EEOC record or conclusions. <u>See, e.g.</u>, <u>Chandler v. Roudebush</u>, 425 U.S. 840, 863 (1976) (in a "civil action" under Title VII, the district court considers the discrimination claim de novo). For the foregoing reasons, we hold that 38 U.S.C. § 7266(a) is a time of review provision. We therefore must reject Mr. Henderson's contention that § 7266(a) is analogous to a statute of limitations.

In holding that § 7266(a) is a time of review provision, we do not break new ground. Indeed, the <u>Bailey</u> court recognized the statute as such. The court referred to § 7266(a) as being "specific in stating where, how and when the notice of appeal must be filed." 160 F.3d at 1365. In addition, in addressing <u>Stone</u>'s statement that "statutory review provisions specifying the time of review" are "mandatory and jurisdictional," <u>Stone</u>, 514 U.S. at 405, this court stated: "We do not think this language can be read to mean that statutes specifying the time for review cannot be subject to equitable tolling

because such statutes are mandatory and jurisdictional." Bailey, 160 F.3d at 1366. It would not have been necessary for the court to make this latter statement if it had not thought that § 7266(a) was a time of review provision.

B.

Holding that 38 U.S.C. § 7266(a) is a time of review provision in a civil case does not end the inquiry, however. As the dissent in Bailey stated, the "general principle in Stone regarding timing-of-review provisions would be inapplicable if there were anything in § 7266(a)(1) or its legislative history indicating that the timing provision governing appeals to the [Veterans Court] was meant to be subject to equitable tolling." Bailey, 160 F.3d at 1372.

Beginning with § 7266(a) itself, we see nothing on its face to indicate that it is meant to be subject to equitable tolling. The statutory language is clear and unequivocal, with no suggestion of equitable tolling:

> In order to obtain review by the Court of Appeals for Veterans Claims of a final decision of the Board of Veterans' Appeals, a person adversely affected by such decision shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed pursuant to section 7104(e) of this title.

38 U.S.C. § 7266(a).

At the same time, looking beyond the language of the statute, we cannot glean clear intent on the part of Congress to override the presumed jurisdictional treatment of time of review provisions. See Bread Political Action Comm. v. Fed. Election Comm'n, 455 U.S. 577, 585 (1982) (noting appellants' burden to show "'clear expression' or 'clear evidence' of congressional intent" to go beyond a statutory provision and make additional procedures available to plaintiffs). We begin with the legislative history of the

Veterans Judicial Review Act, Pub. L. No. 100-687, 102 Stat. 4105 (1988), the statute that created the Veterans Court. In the Senate version of the bill, the regional circuits directly reviewed decisions of the Board, and the time of review provision was jurisdictional. Bailey, 160 F.3d at 1372 (citing S. 11, 100th Cong., 2d Sess. § 4025(g)(1) and S. Rep. No. 100-418 (1988), and noting that "[t]he bill provided that '[n]o action for judicial review may be brought' unless the request for review was filed within 180 days of the [Board] decision"). In the House version of the bill, the Board was replaced by "a 65-judge court responsible for reviewing decisions of the Department's regional offices." 160 F.3d at 1372 (citing H.R. 5288, 100th Cong., 2d Sess. § 4015(d)(1)). In the House bill, appeals had to be filed with the designated court within ninety days of the RO decision, but that period could be extended for good cause. 160 F.3d at 1373. Both the 180-day language in the Senate bill and the "good cause" provision in the House bill were omitted from the compromise bill that resulted in the final legislation. The Bailey dissent noted that, had the good cause provision remained in the final legislation, the timing statute would "have been properly construed as non-jurisdictional in nature." Id. Because the final bill did not retain the good-cause exception, the dissent stated that the compromise bill suggested § 7266(a) was jurisdictional in nature. Id. We agree.

Congress amended § 7266 in 1994. See Veterans' Benefits Improvements Act of 1994, Pub. L. No., 103-446, § 511(a), 108 Stat. 4645, 4670 (1994). The amendment did not affect the jurisdictional nature of the timing requirement, however. Bailey, 160 F.3d at 1373. The 1994 amendment simply altered the requirement of actual delivery of a notice of appeal to the Veterans Court within 120 days, by providing that notices of appeal would be deemed timely if they were mailed within the 120-day appeal period.

See id.; 38 U.S.C. § 7266(b), (c).  The Bailey dissent determined that "[t]he 1994 amendment thus made the timely filing requirement more lenient by establishing a 'postmark rule,' but it did not alter the jurisdictional nature of that requirement."  160 F.3d at 1373.  Again, we agree.

As noted above, Mr. Henderson has observed that eleven years have passed since Bailey, and he argues that Congress has thus acquiesced in our reading of § 7266(a) in Bailey.  "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change."  Lorillard v. Pons, 434 U.S. 575, 580 (1978).  It is true that in the period since 1998, Congress has not amended § 7266(a) in a way that would disturb Bailey.  See supra note 10.  We are not prepared to conclude, however, that this congressional inactivity represents clear intent to rebut the jurisdictional treatment of § 7266(a), as urged by Mr. Henderson.  The "re-enactment rule" delineated in Lorillard does not establish congressional acquiescence in all situations.  See, e.g., Coke v. Long Island Care At Home, Ltd., 376 F.3d 118, 130 n.5 (2d Cir. 2004) (discussing the limitations on the congressional acquiescence argument, "affectionately known as the 'dog didn't bark canon'"), vacated and remanded on other grounds, 546 U.S. 1147 (2006).  Here, it would be inappropriate to rely on congressional "silence" to find approval of Mr. Henderson's position, i.e., that Congress has acquiesced in the interpretation we gave the statute in Bailey, when the Supreme Court itself has characterized its precedent as having "long and repeatedly held that the time limits for filing a notice of appeal are jurisdictional in nature."  Bowles, 551 U.S. at 206 (emphasis added).  We agree with the government that, in this instance, it is more appropriate to presume that Congress

intended application of "long and repeated[]" and "consistent[]" Supreme Court precedent rather than to presume that Congress sub silentio intended the statutory appeal period at issue to be nonjurisdictional. We hold that because § 7266(a) is a time of review provision in a civil case and because Congress has not so provided, it is not subject to equitable tolling. It is thus mandatory and jurisdictional.

Though recognizing § 7266(a) as a time of review provision, the Bailey court held that it was subject to equitable tolling. It reached this conclusion because it determined that Irwin was controlling. As seen, this holding was based upon two determinations. First, the court concluded that Irwin "d[id] not distinguish among the various kinds of limitations that may act as conditions to the waivers of sovereign immunity required to permit a cause of action to be pitched against the United States." Id. at 1364. Second, and most importantly, the court rejected the proposition that Irwin had been limited by Stone. Examining Stone, the court concluded that its language that statutory time of review provisions are "mandatory and jurisdictional" meant only that such provisions "are not subject to equitable tolling after Irwin if Congress has so expressed its intent." Id. at 1366. The Bailey court concluded by stating that it was "not comfortable" drawing "a bright line which would place statutes of limitation on one side of the Irwin presumption [in favor of equitable tolling] and statutes of timing of review on the other." Id. at 1367.

Bailey's holding that § 7266(a) is subject to equitable tolling has been undermined by Bowles, however. As seen, in Bowles, the Supreme Court stated: "Today we make clear that the timely filing of a notice of appeal in a civil case is a jurisdictional requirement." Bowles, 551 U.S. at 214. And of particular significance for

this case, the Court further stated that because Bowles's error in filing his appeal late was "one of jurisdictional magnitude, he [could] not rely on forfeiture or waiver to excuse his lack of compliance with the statute's time limitations." Id. at 213. The Court added that it had no authority to create equitable exceptions to jurisdictional requirements. Id. at 214. The critical point is that, whereas in Bailey we relied on Irwin to conclude that time of review provisions are subject to equitable tolling unless Congress has expressed a contrary intent, see 160 F.3d at 1365–66, in Bowles the Court reached the conclusion that because time of review provisions are mandatory and jurisdictional, they are not subject to equitable tolling unless Congress so provides, see 551 U.S. at 212–13. Thus, in light of Bowles, we are compelled to draw the bright line between statutes of limitations and time of review provisions that the Bailey court declined to draw. Because Congress has not expressed the requisite assent, we hold that the time of review period in § 7266(a) is not subject to equitable tolling.

## C.

Faced with Bowles, Mr. Henderson contends that the reach of the Court's decision is limited. First, he argues that, in John R. Sand & Gravel Co. v. United States, 552 U.S. 130 (2008), the Supreme Court had the opportunity to expand its holding in Bowles, but chose not to do so. Appellant's Br. 15. He states that one issue in John R. Sand & Gravel was whether 28 U.S.C. § 2501, the six-year statute of limitations applicable to Tucker Act suits in the United States Court of Federal Claims, is subject to equitable tolling. According to Mr. Henderson, the Court held that § 2501 is "jurisdictional," citing Bowles to support its definition of a "jurisdictional" statute. "But," Mr. Henderson continues, "the Supreme Court did not expand Bowles by holding that

because the statute is jurisdictional, it is not subject to equitable tolling." Id. The government rejoins that John R. Sand & Gravel does not help Mr. Henderson.

We are not persuaded by Mr. Henderson's argument that John R. Sand & Gravel suggests that Bowles is limited. The issue in John R. Sand & Gravel was narrow. The Supreme Court stated: "The question presented is whether a court must raise on its own the timeliness of a lawsuit filed in the Court of Federal Claims, despite the Government's waiver of the issue." 552 U.S. at 132. The Court held that 28 U.S.C. § 2501, which it characterized as "the special statute of limitations governing the Court of Federal Claims," required "that sua sponte consideration." Id. The Court affirmed the decision of this court to consider the timeliness of John R. Sand & Gravel's suit in the Court of Federal Claims even though the government had waived the issue. Id. at 139; see John R. Sand & Gravel Co. v. United States, 457 F.3d 1345 (Fed. Cir. 2006).

It is true that, in deciding John R. Sand & Gravel, the Court mentioned Bowles in passing in referring to "jurisdictional" statutes. See John R. Sand & Gravel, 552 U.S. at 134 ("As convenient shorthand, the Court has sometimes referred to the time limits in [statutes of limitations] as 'jurisdictional.' See, e.g., Bowles, supra, at 2364.") However, contrary to Mr. Henderson's argument, because John R. Sand & Gravel involved the issue of waiver and a statute of limitations provision, rather than the issue of equitable tolling and a time of review provision, which was at issue in Bowles, there was no need for the John R. Sand & Gravel Court to discuss Bowles further one way or the other. Thus, not surprisingly, the Court focused its attention on Irwin, which, as a statute of limitations case, was pertinent to the issue before it. In short, we do not see John R. Sand & Gravel as being helpful to Mr. Henderson.

Mr. Henderson makes a second argument to limit Bowles. He contends that the Court's decision in Bowles, which did not discuss § 7266(a) or the doctrine of equitable tolling, Appellant's Br. 13–14, "relies on separation of powers principles that apply to Article III courts." Id. at 22. Mr. Henderson states that Bowles "is consistent with the fundamental principle that Article III courts cannot 'extend by rule the judicial power of the United States described in Article III of the Constitution.'" Id. at 23 (quoting Willy v. Coastal Corp., 503 U.S. 131, 135 (1992)). Mr. Henderson urges that this principle does not apply to Article I tribunals such as the Veterans Court: "The Supreme Court in Bowles was not faced with, and did not reach, the question of whether statutory time limits applicable to Article I courts may be extended on equitable grounds," he states. Id.

The government urges that the Article I nature of the Veterans Court should not change our analysis. The government notes that the Supreme Court and circuit courts of appeals have held that time limits on appeals from agency orders and adjudications can be jurisdictional. See Stone, 514 U.S. at 406; Reueiz-Martinez v. Mukasey, 516 F.3d 102, 118 (2d Cir. 2008) (applying Bowles); Cellular Telecomm's. & Internet Ass'n v. FCC, 330 F.3d 502, 508 (D.C. Cir. 2003); Flofilli Corp. v. Pena, 118 F.3d 1212, 1214 (8th Cir. 1997); AFL-CIO v. OSHA, 905 F.2d 1568, 1570 (D.C. Cir. 1990); Shendock v. Dir. Office Workers' Comp. Programs, 893 F.2d 1458, 1462-66 (3d Cir. 1990). According to the government, here, as in Griggs v. Provident Consumer Discount Co., the notice of appeal divests jurisdiction from one body and vests jurisdiction in

another.[11]  The government argues that this jurisdictional transfer occurs regardless of whether the bodies involved were created under Article I or Article III.

The Supreme Court has recently said: "[I]t is for Congress to determine the subject-matter jurisdiction of federal courts.  This rule applies with added force to Article I tribunals, . . . which owe their existence to Congress' authority to enact legislation pursuant to Art. 1, § 8 of the Constitution."  United States v. Denedo, 129 S. Ct. 2213, 2221 (2009) (citing Bowles) (internal citations and quotation marks omitted) (emphasis added).  Additionally, as stated in Bowles, "the notion of subject-matter jurisdiction obviously extends to classes of cases . . . falling within a court's adjudicatory authority, but it is no less jurisdictional when Congress forbids federal courts from adjudicating an otherwise legitimate class of cases after a certain period has elapsed from final judgment."  551 U.S. 213 (internal citations and quotation marks omitted) (omission in original).  As a result, "when an appeal has not been prosecuted in the manner directed, within the time limited by the acts of Congress, it must be dismissed for want of jurisdiction."  Id. (internal quotation marks omitted).  Because the Supreme Court has stated that the jurisdictional rationale applies with even "added" force to Article I courts, we cannot agree with Mr. Henderson that the Article I nature of the Veterans Court changes the analysis under Bowles.

---

[11]    In Griggs, the Supreme Court reversed the Third Circuit's acceptance of jurisdiction pursuant to a premature filing of a notice of appeal.  459 U.S. at 58.  In so doing, the Court stated: "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  Id. (emphasis added).

D.

For their part, the amici contend that while 28 U.S.C. § 2107(c), which was at issue in Bowles, is written in language limiting the Article III jurisdiction of the federal appellate courts, § 7266(a) is written as a "claim processing" rule, and therefore should be treated as non-jurisdictional. The amici note that subsection (c) of § 2107 provides that the "district court" can "extend the time for appeal" in certain instances. See, e.g., Halseth Br. 22; NOVA Br. 8. They argue that this language defines the limits of what the district court can and cannot do, and therefore must be jurisdictional. By contrast, amici urge, § 7266(a) defines what the veteran must do, and the statute is therefore a claim processing rule, and not jurisdictional. Specifically, as seen, § 7266(a) provides that "a person adversely affected" by a decision of the Board "shall file a notice of appeal with the [Veterans Court] within 120 days after the date on which notice of the decision is mailed." Because the statute does not facially indicate which cases the Veterans Court can and cannot take, amici argue that § 7266(a) does not contain any jurisdictional limitations. See, e.g., Halseth Br. 13, 23; DAM Br. 6–7; PV/JWV Br. 4.

We reject the argument that § 7266(a) is subject to equitable tolling because it is a claim processing rule. As stated by the Supreme Court in Bowles, claim-processing rules "adopted by [a c]ourt for the orderly transaction of its business" are not jurisdictional (and indeed, cannot be, as only Congress can dictate the jurisdiction of the lower Article III courts). 551 U.S. at 211. At the same time, the Court has stressed "the jurisdictional significance of the fact that a time limitation is set forth in a statute," as opposed to in a court-promulgated rule. Id. at 210. As an initial matter, it is clear that

§ 7266(a) is not a "court-promulgated rule[]," but is a time limit enacted by Congress. It thus could properly be deemed "jurisdictional" under Bowles.

We recognize that while 28 U.S.C. § 2107, the statute at issue in Bowles, is phrased in terms of what the district court can and may do, § 7266(a) is phrased in terms of the actions a veteran must take to preserve his or her right to appeal. We conclude, however, that this distinction does not convert § 7266(a) into a claim-processing rule. The time limit is set out statutorily, a crucial point for the Supreme Court in determining which of such limits are jurisdictional and which are not. See Bowles, 551 U.S. at 211 (noting that § 2107 contains "the type of statutory time constraints that would limit a court's jurisdiction.") Moreover, although the statute at issue here is drafted in terms of the veteran's obligations, it states that the notice of appeal "shall" be filed with the Veterans Court within 120 days of the mailing of the Board's final decision. 38 U.S.C. § 7266(a) (emphasis added). Furthermore, as we stated in Bailey, we must read the jurisdictional waiver of sovereign immunity for the Veterans Court, set forth in 38 U.S.C. § 7252, in light of the qualifications in § 7266, "because we must construe jurisdictional statutes narrowly and 'with precision and with fidelity to the terms by which Congress has expressed its wishes.'" Bailey, 160 F.3d at 1363. Section 7266(a) is the only provision that specifies the timing for filing a notice of appeal in the Veterans Court. The textual focus on the veteran does not transform the statute into a claim-processing rule.

V.

The final argument Mr. Henderson and the various amici make is that because the veterans system is uniquely non-adversarial and pro-claimant, we should not import

jurisdictional rules into the system. The amici note that the Veterans Court was created to be an extra safeguard for those who served in the military, and that Congress strove to ensure, at the court's inception, that it was "[a]ccurate, informal, efficient, and fair." H.R. Rep. No. 100-936 (1988), reprinted in 1988 U.S.C.C.A.N. 5782, 5808. The amici urge that only a flexible system, which allows for equitable tolling, can meet these four goals. See, e.g., United Spinal Br. 4.

The government responds that we have stated that proceedings before the Veterans Court are not non-adversarial, and that there are certain legal requirements veterans must meet. See Forshey v. Principi, 284 F.3d 1335, 1355 (Fed. Cir. 2002), superseded by statute on other grounds ("The veterans' benefits system remains a non-adversarial system when cases are pending before the Veterans' Administration. However, the [Veterans Court's] proceedings are not non-adversarial."); Bailey, 160 F.3d at 1365 ("[V]eterans like Bailey must satisfy formal legal requirements, often without the benefit of legal counsel, before they are entitled to administrative and judicial review."). Although recognizing that special protections are afforded the veteran, the government argues that the meaning of § 7266(a) is clear, and we may not ignore the fact that the statute is a time of review provision.

As far as the uniquely pro-claimant, non-adversarial nature of the veterans system is concerned, we acknowledge that the government has special duties to assist a veteran with his or her claim. However, we have recently been reminded by the Supreme Court that, although "Congress has expressed special solicitude for the veterans' cause," we do not have free rein to establish special procedural schemes governing the veterans' system alone. Shinseki v. Sanders, 129 S. Ct. at 1707. In

<u>Sanders</u>, the Supreme Court struck down our unique harmless error rubric, concluding that it was "too complex and rigid," and "impose[d] unreasonable evidentiary burdens upon the VA." <u>Id.</u> at 1700. In reaching this conclusion, the Court traced the parallel language of the Administrative Procedure Act and the Veterans Court's harmless error statutes. The Supreme Court found "no indication of any relevant distinction between the manner in which reviewing courts treat civil and administrative" cases, and concluded that we must apply the harmless error framework set forth for "ordinary civil cases." <u>Id.</u> at 1704.

We complete our analysis with <u>Sanders</u> in mind. While it is clear the veterans' system is unique, we must be wary of hinging different procedural frameworks solely on the special nature of that system. Jurisdiction is in the province of Congress, and without any clear intent by Congress to provide for equitable relief from the Notice of Appeal filing deadline in 38 U.S.C. § 7266(a), we cannot read in such relief based on the nature of the veterans system.

CONCLUSION

We hold that 38 U.S.C. § 7266(a) is a time of review provision in a civil case and that, because Congress has not so provided, it is not subject to equitable tolling. The statute is thus mandatory and jurisdictional. We therefore overrule our decisions in <u>Bailey</u> and <u>Jaquay</u>, where we held that § 7266(a) is subject to equitable tolling. We overrule <u>Bailey</u> and <u>Jaquay</u> not because we have concluded in retrospect that they were incorrectly decided in light of then-current Supreme Court authority. Rather, we do so because we have concluded that they have been overtaken by subsequent authority, specifically, <u>Bowles</u>, where the Supreme Court unequivocally stated that "the timely

filing of a notice of appeal in a civil case is a jurisdictional requirement" and that it had "no authority to create equitable exceptions to jurisdictional requirements." 551 U.S. at 214. If Congress determines that the 120-day period for appealing to the Veterans Court from a decision of the Board should be subject to equitable tolling, it may amend § 7266(a) to compel a result different from the one we reach today. We, however, are not empowered to make that change. See id. at 215. For the foregoing reasons, the Veterans Court correctly held that it lacked jurisdiction to consider Mr. Henderson's appeal. Its decision dismissing his appeal is therefore affirmed.[12]

AFFIRMED

COSTS

No costs.

---

[12] The court is grateful to Thomas W. Stoever, Jr. and Jacek A. Wypych of Arnold & Porter LLP for their excellent pro bono representation of Mr. Henderson.

# United States Court of Appeals for the Federal Circuit

2009-7006

DAVID L. HENDERSON,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in 05-0090, Chief Judge William P. Greene, Jr.

DYK, <u>Circuit Judge</u>, with whom GAJARSA and MOORE, <u>Circuit Judges</u>, join, concurring.

I join the opinion of the Court, but I also agree with Judge Mayer that the rigid deadline of the existing statute can and does lead to unfairness. This is particularly so in the many cases where the veteran is not represented by counsel during the processing of the claim at the Veterans Administration and/or is suffering from a mental disability. These circumstances can make it extremely difficult for the veteran to navigate the system and meet the statutory deadline. These situations are not merely hypothetical, as our prior decisions demonstrate.[1] In this case, the veteran suffered

---

[1] See <u>Barrett v. Nicholson</u>, 466 F.3d 1038 (Fed. Cir. 2006) (service-connected mental illness); <u>Jaquay v. Principi</u>, 304 F.3d 1276 (Fed. Cir. 2002) (en banc) (claimant's non-attorney representative mistakenly mailed request for reconsideration to wrong office, thus resulting in untimely filing); <u>Bailey v. West</u>, 160 F.3d 1360 (Fed. Cir.

from a service-connected mental illness allegedly leading to the late filing. The problems with the rigid rule of the existing statute may suggest that Congress should amend the statute to provide a good cause exception.

---

1998) (en banc) (no counsel; regional office mistakenly retained appeals documentation, thus resulting in untimely filing).

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2009-7006

DAVID L. HENDERSON,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in 05-0090, Chief Judge William P. Greene, Jr.

MAYER, <u>Circuit Judge</u>, with whom MICHEL, <u>Chief Judge</u>, and NEWMAN, <u>Circuit Judge</u>, join, dissenting.

"Courts do not normally overturn a long line of earlier cases without mentioning the matter." <u>John R. Sand & Gravel Co. v. United States</u>, 552 U.S. 130, 137 (2008) ("<u>Sand & Gravel</u>"). <u>Bowles v. Russell</u>, 551 U.S. 205 (2007), did not mention—much less overrule—the Supreme Court's long line of cases affirming the application of equitable tolling. And our sister circuit courts of appeals have concluded that the doctrine of equitable tolling survives <u>Bowles</u> and applies to statutory filing deadlines. <u>See</u> <u>Ross-Tousey v. Neary</u>, 549 F.3d 1148 (7th Cir. 2008); <u>Diaz v. Kelly</u>, 515 F.3d 149 (2d Cir. 2008); <u>Coker v. Quarterman</u>, 270 Fed. App'x 305 (5th Cir. 2008). For this court to stake out the opposite position is lamentably unsupportable.

I.

No legal system can function without deadlines, but the majority's eradication of equitable tolling in proceedings before the United States Court of Appeals for Veterans Claims ("Veterans Court") creates a Kafkaesque adjudicatory process in which those veterans who are most deserving of service-connected benefits will frequently be those least likely to obtain them. It is the veteran who incurs the most devastating service-connected injury who will often be the least able to comply with rigidly enforced filing deadlines. Under the majority's approach, this veteran will be both "out of luck and out of court," since failure to comply with the 120-day deadline prescribed in 38 U.S.C. § 7266(a) means that he forfeits all right to judicial review of his claim.

Two en banc panels of this court have held that the time limit for filing an action under section 7266(a) at the Veterans Court is subject to equitable tolling. See Jaquay v. Principi, 304 F.3d 1276 (Fed. Cir. 2002); Bailey v. West, 160 F.3d 1360 (Fed. Cir. 1998). We have recognized that "[i]t would be both ironic and inhumane to rigidly implement section 7266(a) because the condition preventing a veteran from timely filing is often the same illness for which compensation is sought." Barrett v. Principi, 363 F.3d 1316, 1320 (Fed. Cir. 2004).

Although a majority of this court now wants to jettison this well-established, salutary precedent, Bowles provides a very flimsy foundation for doing so. Bowles neither addresses nor undermines this court's rationale for permitting equitable tolling in actions brought in the Veterans Court. The application of equitable tolling under section 7266(a) flows directly from the Supreme Court's decision in Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95-96 (1990). Irwin was not—and could not have been—

at issue in <u>Bowles</u>. The <u>Irwin</u> presumption of equitable tolling applies only when the federal government is the defendant in an action. 498 U.S. at 95-96. In <u>Bowles</u>, on the other hand, a state prisoner brought a federal habeas petition, and the state, not the federal government, was the defendant. <u>See</u> 551 U.S. at 207. <u>Irwin's</u> equitable tolling principles were therefore clearly not at issue in <u>Bowles</u>, and it is for this reason that the majority opinion there did not cite, much less seek to distinguish, <u>Irwin</u>. It was because the doctrine of equitable tolling was not available that the petitioner in <u>Bowles</u> attempted to rely on the "unique circumstances" doctrine to excuse his untimely filing. <u>See</u> <u>Bowles</u>, 551 U.S. at 213-14; <u>see also</u> <u>Sierra Club N. Star Chapter v. Peters</u>, No. 07-2593, 2008 U.S. Dist. LEXIS 39966, at *21 (D. Minn. 2008) (concluding that <u>Bowles</u> is simply "not relevant" to the application of equitable tolling under <u>Irwin</u>).

If there was any doubt that <u>Bowles</u> left the <u>Irwin</u> doctrine of equitable tolling unscathed, it was dispelled by the Supreme Court's recent decision in <u>Sand & Gravel</u>. There the Court reaffirmed the continuing vitality of the <u>Irwin</u> presumption of equitable tolling, although the Court ultimately concluded that the presumption had been rebutted with respect to the filing of suit under 28 U.S.C. § 2501 at the United States Court of Federal Claims.[1] <u>Sand & Gravel</u>, 552 U.S. at 133-38. Simply put, "<u>Irwin</u> remains good law." <u>Santos v. United States</u>, 559 F.3d 189, 197 (3d Cir. 2009). Because our application of equitable tolling at the Veterans Court flows directly from <u>Irwin</u>, nothing in <u>Bowles</u> provides a sufficient basis for casting aside our long-established equitable tolling jurisprudence.

---

[1] The Court concluded that the "definitive earlier interpretation of the statute" applicable to suits filed in the Court of Federal Claims "offer[ed] a . . . sufficient rebuttal" to the <u>Irwin</u> presumption. <u>Sand & Gravel</u>, 552 U.S. at 137-38.

The majority seizes upon the following sentence from Bowles: "Today we make clear that the timely filing of a notice of appeal in a civil case is a jurisdictional requirement." 551 U.S. at 214. When read in context, however, it is clear that this statement means only that the appellate filing deadline set by Rule 4 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2107(a) is jurisdictional in nature.[2] Bowles begins its analysis by stating that it is addressing the question of "whether the Court of Appeals lacked jurisdiction to entertain an appeal filed outside the 14-day window allowed by § 2107(c)." 551 U.S. at 209. The Court then proceeds to answer that narrow question by analyzing cases appealed from one Article III court to another Article III court. Over and over again in its relatively brief opinion, the Supreme Court focuses on appeals from a district court to a court of appeals. See id. at 210 ("[E]ven prior to the creation of the circuit courts of appeals, this Court regarded statutory limitations on the timing of appeals as limitations on its own jurisdiction." (emphasis added)); id. ("[T]he courts of appeals routinely and uniformly dismiss untimely appeals for lack of jurisdiction." (emphasis added)); id. at 213 ("Bowles' failure to file his notice of appeal in accordance with the statute . . . deprived the Court of Appeals of jurisdiction." (emphasis added)). Notably, each of the cases cited by the Court to support its conclusion that the filing of a notice of appeal within a statutorily prescribed period is "mandatory and jurisdictional" involved appeals from one Article III court to another. Id. at 209-10. Because Bowles is limited, by its facts and the cases upon which it relies, to

---

[2] Fed. R. App. P. 4 "carries [28 U.S.C. § 2107(c)] into practice" and "describes the district court's authority to reopen and extend the time for filing a notice of appeal." Bowles, 551 U.S. at 208.

appeals from one Article III court to another, it does not speak to the separate issue of whether equitable tolling applies to judicial review of agency decisions.

A fundamental fallacy underlying the majority's approach to section 7266(a) is that it confuses extending a limitations period with suspending one. Bowles addressed the question of whether a district court could extend the statutory time limit for reopening an appeal from fourteen to seventeen days. 551 U.S. at 209-10. Tolling does not extend any statutory deadline; instead it "temporarily halts" the running of the statutory clock. See Jaquay, 304 F.3d at 1281 n.2. "Principles of equitable tolling usually dictate that when a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped." United States v. Ibarra, 502 U.S. 1, 4 n.2 (1991). While Bowles considered the question of whether a district court had authority to extend a statutory deadline for filing an appeal, it said nothing about whether a particular limitations period could be suspended because of equitable considerations. Here, the relevant inquiry is not whether the Veterans Court can extend the 120-day filing period, but whether the running of the statutory period is suspended during periods when a veteran is physically or mentally incapacitated.

A second significant difficulty with the majority's approach is that it applies Bowles to the wrong filing deadline. Bowles addresses the jurisdictional significance of the time limit for appealing a district court decision to a court of appeals. In the veterans' adjudicatory system, an appeal from the Veterans Court to this court is the procedural equivalent of an appeal from a district court to a court of appeals. See 38 U.S.C. § 7292 (providing that appeals from the Veterans Court to this court are to be

taken "within the time and in the manner prescribed for appeals to United States courts of appeal from United States district courts"). Thus, even assuming arguendo that Bowles can be extended to the system for adjudicating veterans' claims, it would make the time limit for appealing from the Veterans Court—instead of the time limit for appealing to the court—jurisdictional in nature. See Henderson v. Peake, 22 Vet. App. 217, 224 n.2 (2008) (Schoelen, J., dissenting) ("[I]f anything, Bowles supports the Federal Circuit's practice of refusing to allow equitable tolling for appeals from [the Veterans Court] to the Federal Circuit.").

The third and most important error infecting the majority's analysis is that it fails to properly differentiate between deadlines for bringing suit and those for filing appeals. A trial court's judgment is presumed "correct and final, except only for such review and revision as are specified in the statute authorizing and establishing the pre-conditions for appeal." Bailey, 160 F.3d at 1370 (Michel, J., concurring). Thus, an "appellate court['s] power of review is sharply limited, for judgments are reviewable only if both final and adverse to the party appealing and . . . filed within the time required by statute." Id. This is precisely what Bowles recognizes: if an appeal of a court's judgment "has not been prosecuted in the manner directed, within the time limited by the acts of Congress, it must be dismissed for want of jurisdiction." 551 U.S. at 213 (citations and internal quotation marks omitted); see Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982). (Filing an appeal of a district court decision "is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.").

In contrast to time limits for appeal, deadlines for bringing suit are generally not deemed jurisdictional. They are instead viewed as statutes of limitations, subject to equitable tolling. See Sand & Gravel, 552 U.S. at 133 ("Most statutes of limitations seek primarily to protect defendants against stale or unduly delayed claims" and "typically permit courts to toll the limitations period in light of special equitable considerations."); Rotella v. Wood, 528 U.S. 549, 560 (2000) ("[F]ederal statutes of limitations are generally subject to equitable principles of tolling."). The Supreme Court has made clear that time limits for seeking initial court review of adverse agency actions are generally classified as statutes of limitations rather than jurisdictional bars. In Bowen v. City of New York, 476 U.S. 467, 480-81 (1986), the Court unanimously ruled that equitable tolling applies to the statutory sixty-day period for bringing an action in district court to review a denial of Social Security disability benefits by the Secretary of Health and Human Services. Likewise, in Irwin, the Court held that equitable tolling applies to the statutory thirty-day period for seeking review in district court of a final action by the Equal Employment Opportunity Commission ("EEOC"). 498 U.S. at 95-97.

Just as the statutes construed in Bowen and Irwin, section 7266(a) provides a time limit for seeking initial court review of an adverse agency action. See Jaquay, 304 F.3d at 1286 ("[T]he filing of a notice of appeal at the Veterans Court, like the filing of a complaint in a trial court, is the first action taken by a veteran in a court of law."). Furthermore, like the Social Security benefits scheme involved in Bowen and the employment discrimination scheme addressed in Irwin, the veterans' benefits system is an adjudicatory framework "that Congress designed to be unusually protective of claimants." Bowen, 476 U.S. at 480 (internal quotation marks omitted); see Jaquay,

304 F.3d at 1280 ("Congress has created a paternalistic veterans' benefits system to care for those who served their country in uniform."). Because section 7266(a) is similar in most important respects to the statutes at issue in <u>Bowen</u> and <u>Irwin</u>, and is fundamentally different from that addressed in <u>Bowles</u>, it is properly viewed as a statute of limitations rather than a rigid jurisdictional bar.

<u>Stone v. Immigration & Naturalization Service</u>, 514 U.S. 386 (1995), upon which the majority relies, is not to the contrary. <u>Stone</u> held that the time limit for appealing a final deportation order issued by the Board of Immigration Appeals is not amenable to equitable tolling. <u>Id.</u> at 405. Removal proceedings, however, "closely resemble a trial" and "are adversarial and employ many of the same procedures used in Article III courts." <u>Frango v. Gonzales</u>, 437 F.3d 726, 728 (8th Cir. 2006) (citations and internal quotation marks omitted); <u>Etchu-Njang v. Gonzales</u>, 403 F.3d 577, 583 (8th Cir. 2005) (contrasting "adversarial" removal proceedings with "inquisitorial" Social Security benefit proceedings). Because the appeal of a final deportation order is very similar to an appeal from a district court decision, it is not surprising that the Court determined that the deadline for appealing a deportation order is not subject to equitable tolling. Indeed, <u>Stone</u> itself recognizes that its decision to preclude equitable tolling was an aberration, and the general rule is that tolling applies to time limits for bringing suit against the federal government. 514 U.S. at 398 ("Underlying considerations of administrative and judicial efficiency . . . support our conclusion that Congress intended to depart from the conventional tolling rule in deportation cases.")

When a veteran brings a claim before the Board of Veterans' Appeals ("board"), "the relationship between the veteran and the government is non-adversarial and pro-

claimant." Jaquay, 304 F.3d at 1282. Thus, unlike deportation actions, proceedings before the board are fundamentally unlike proceedings before a district court. See Bailey, 160 F.3d at 1370 (Michel, J., concurring) (explaining that the board "is not a trial court"); Forshey v. Principi, 284 F.3d 1335, 1360 (Fed. Cir. 2002) (en banc) (Mayer, C.J., dissenting) (Board proceedings are "entirely inquisitorial" in that their purpose "is to ensure that the veteran receives whatever benefits he is entitled to, not to litigate as though it were a tort case.") Because board proceedings are non-adversarial in nature, it is the Supreme Court's decisions in Irwin and Bowen, not Stone, which control.

## II.

"Obedience to a Supreme Court decision is one thing, extrapolating from its implications a holding on an issue that was not before that Court in order to upend settled circuit law is another thing." Main Drug, Inc. v. Aetna U.S. Healthcare, Inc., 475 F.3d 1228, 1230 (11th Cir. 2007). As other circuits have correctly recognized, it is an "unwarranted extension of Bowles to think that the Court was impliedly rendering equitable tolling inapplicable to limitations periods just because they are set forth in statutes." Diaz, 515 F.3d at 153. Interpreting Bowles to apply to every statutory filing deadline "would overturn huge swaths of established case law." Ross-Tousey, 549 F.3d at 1155. Thus, in the wake of Bowles, many courts have concluded that the doctrine of equitable tolling is alive and well and can appropriately be applied to many different filing deadlines. See, e.g., Rouse v. Dep't of State, 567 F.3d 408, 417 (9th Cir. 2009) (applying equitable tolling to the limitations period for filing claims under the Privacy Act); Santos, 559 F.3d at 194-97 (concluding that equitable tolling is available under the Federal Tort Claims Act); Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011

(2d Cir. 2009) (concluding that Bowles did not invalidate the application of equitable tolling to the time limit for claims under the Antiterrorism and Effective Death Penalty Act ("AEDPA")); Ross-Tousey, 549 F.3d at 1155 (concluding that the deadline for filing a motion to dismiss under Chapter 7 of the Bankruptcy Code was not jurisdictional); Diaz, 515 F.3d at 153 (concluding that equitable tolling applies under the AEDPA); Percy v. Shinseki, 23 Vet. App. 37, 44 (2009) (concluding that the time limit for filing a substantive appeal to the board under 38 U.S.C. § 7105(d)(3) is not jurisdictional); Engel v. 34 E. Putnam Ave. Corp., 552 F. Supp. 2d 291, 294 (D. Conn. 2008) (concluding that the 30-day period for filing a motion to remand a case under 28 U.S.C. § 1447(c) was not jurisdictional); but see, e.g., United States v. Rodriguez, 67 M.J. 110 (C.A.A.F. 2009) (concluding, in light of Bowles, that the statutory timing provision for criminal appeals from the United States Navy-Marine Corps Court of Criminal Appeals, 10 U.S.C. § 867(b), is "jurisdictional" and not susceptible to equitable tolling).

Indeed, in an aptly titled case, United States v. Henderson, 536 F.3d 776, 779 (7th Cir. 2008), the Seventh Circuit correctly determined that, notwithstanding Bowles, not all statutory time for appeal provisions are jurisdictional. At issue there was the time for appeal provision contained in 18 U.S.C. § 3731, which provides that the government has the right to appeal "a decision or order of a district court suppressing or excluding evidence" so long as the appeal is "taken within thirty days after the decision, judgment or order has been rendered." 536 F.3d at 778. Although the government failed to file its appeal within the statutorily prescribed period, the Seventh Circuit rejected the contention that Bowles required dismissal of the appeal. Id. at 778-79. The court explained that "Bowles considered whether a court may make an exception to a

statutorily imposed time limit for filing an appeal; it did not involve the separate question of when such a time limit begins to run." Id. at 779 n.2.[3]  A similar analysis can be applied here.  Even assuming arguendo that Bowles precludes the Veterans Court from making "exceptions" to section 7266(a)'s limitations period, it does not specify when the limitations period begins to run.   Accordingly, there is nothing in Bowles to prevent a determination that the statutory period does not begin to run or, as discussed previously, is suspended during periods when a veteran is physically or mentally incapacitated.

III.

"It is hornbook law that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute."  Young v. United States, 535 U.S. 43, 49-50 (2002) (citations and internal quotation marks omitted).  Thus, in analyzing section 7266(a), the key inquiry is whether "there [is] a good reason to believe that Congress did not want the equitable tolling doctrine to apply."  United States v. Brockamp, 519 U.S. 347, 350 (1997) (emphasis in original));  Sand & Gravel, 552 U.S. at 138 (noting that the Irwin presumption of equitable tolling can be rebutted "by demonstrating Congress' intent to the contrary");  Arbaugh v. Y & H Corp., 546 U.S. 500, 516 (2006) ("[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.").  The majority adduces nothing to demonstrate that Congress intended to preclude the application of equitable tolling in proceedings before the Veterans Court.

---

[3]  The court ultimately concluded that the statutory period for filing an appeal did not begin to run during the pendency of a timely filed motion for reconsideration, notwithstanding the fact that the statute provided that appeals had to be taken within thirty days of a district court decision.  Henderson, 536 F.3d at 779 n.2.

To the contrary, section 7266(a)'s language, legislative history and placement within a uniquely benevolent adjudicatory scheme compel the conclusion that it was designed to function as a statute of limitations rather than an inflexible jurisdictional bar.

A. Limits on a Court's Reviewing Authority

The Supreme Court has historically distinguished between statutes that address the power of a court to hear a case and those that impose timely filing obligations on individual litigants. See Kontrick v. Ryan, 540 U.S. 443, 453-55 (2004) (discussing the difference between a court's authority to hear a case, and rules that simply tell a court how to process claims in cases that Congress has permitted the courts to hear). While the former are mandatory and jurisdictional, the latter are not, and can be equitably tolled in appropriate circumstances. See id. The statute at issue in Bowles contains an express limit on the power of Article III courts to hear appeals. See 28 U.S.C. § 2107(a) ("[N]o appeal shall bring any judgment . . . before a court of appeals for review unless notice of appeal is filed . . . within thirty days after the entry of . . . judgment."). Given this explicit limit on judicial authority, it is not surprising that the Supreme Court determined that the failure to file within the period specified in the statute "deprived the Court of Appeals of jurisdiction." Bowles, 551 U.S. at 213.

Here, in contrast, section 7266(a) is not framed as an express limit on the authority of the reviewing tribunal, but instead speaks only to the actions a veteran must take to bring his claim:

> In order to obtain review by the Court of Appeals for Veterans Claims of a final decision of the Board of Veterans' Appeals, a person adversely affected by such decision shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed pursuant to section 7104(e) of this title.

38 U.S.C. § 7266(a).

Because the statute at issue here, unlike the statute at issue in Bowles, does not contain an explicit limitation on the authority of the reviewing court, it is properly classified as a claims-processing rule, which, while serving the salutary purpose of protecting against stale claims, is not imbued with the jurisdictional heft of a statutory limit on judicial authority. See Kontrick, 540 U.S. at 455 ("Clarity would be facilitated if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority.").

Tellingly, Congress considered, but rejected, language that might have made section 7266(a) jurisdictional in nature. When it was wrestling with different approaches to judicial review of veterans' claims, a Senate bill proposed direct review of board decisions by the regional circuit courts of appeals. It stated that "no action [for judicial review] may be brought" unless the request for review "is filed not more than 180 days after" notice of the board's decision. S. 11, 100th Cong., 2d Sess. § 4025(g)(1). That language "was clearly jurisdictional in nature," Bailey, 160 F.3d at 1372 (Bryson, J., dissenting), similar in many respects to the language of the statute deemed jurisdictional in Bowles. See 28 U.S.C. § 2107(a) ("[N]o appeal shall bring any judgment . . . before a court of appeals for review unless notice of appeal is filed . . . within thirty days after the entry of . . . judgment."). Because Congress ultimately rejected language that would have framed the deadline for filing at the Veterans Court as a limit on the power of the court to hear a case, we can presume that it did not intend for section 7266(a) to serve as a jurisdictional bar. See Arctic Slope Native Ass'n v.

<u>Sebelius</u>, 2009 U.S. App. LEXIS 21361, at \*37 (Fed. Cir. Sept. 29, 2009) ("Of course, a central factor in determining whether a particular statute is subject to equitable tolling is the language used to set forth the time limitation.").

The language Congress ultimately selected for framing the deadline for filing appeals to the Veterans Court, however, is remarkably similar to the language it choose to set forth the time limit for bringing a challenge to a final EEOC action in the statute addressed in <u>Irwin</u>. There the statute provided that "an employment discrimination complaint against the Federal Government under Title VII must be filed 'within thirty days of receipt of notice of final action taken' by the EEOC." <u>Irwin</u>, 498 U.S. at 92 (quoting 42 U.S. C. § 2000e-16(c)). Because section 7266(a), like the <u>Irwin</u> statute, imposes timely filing obligations on an individual litigant seeking court review of an adverse agency action, instead of imposing limits on the authority of a reviewing tribunal, it is properly viewed as a statute of limitations rather than a jurisdictional bar.

Little, if any, significance can be attached to the fact that during the period when Congress was wrestling with different approaches to providing judicial review of veterans' claims, a bill in the House provided that the time period for filing at the Veterans Court could be extended "for good cause shown." <u>See</u> H.R. 5288, 100th Cong., 2d Sess. § 4015(d)(1). This bill also proposed eliminating the board and replacing it with a 65-judge Court of Veterans Appeals that would have had responsibility for direct review of decisions from the Veterans Affairs' regional offices. <u>Id.</u> at § 4003. Because the good cause exception was part of an adjudicatory framework that was ultimately rejected by Congress, it is not surprising that there is no explicit good cause exception in the final version of section 7266(a). Indeed, by the

time Congress finally passed the Veterans Judicial Review Act, Pub. L. No. 100-687, 102 Stat. 4105, in 1988, the Supreme Court had already determined that equitable tolling applied to the time limits for bringing challenges to adverse agency decisions. See Bowen, 476 U.S. at 477-79. Under such circumstances, it would have been superfluous to include a provision allowing tolling of the limitations period under section 7266(a). See Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.").

The majority makes much too much of the fact that the filing a veteran uses to commence litigation at the Veterans Court is styled a "notice of appeal." Presumably, Congress only used the term "notice of appeal" in section 7266(a) to distinguish the filing a veteran makes at the Veterans Court from the one he makes at the board, which is called a "notice of disagreement." See 38 U.S.C. § 7105. There is not a scintilla of evidence in the legislative history to indicate that Congress used the term "notice of appeal" in section 7266(a) in order to equate the filing a veteran makes at the Veterans Court with the filing a litigant makes to appeal a final district court judgment. To the contrary, Congress uses the term "appeal" throughout Title 38 whenever it wishes to refer to a veteran's challenge to a prior determination, regardless of whether that determination is from the regional office or the board. See, e.g., 38 U.S.C. § 7101 referring to the board as "the Board of Veterans' Appeals" (emphasis added)); id. at § 7104 (discussing "appeals" to the board); id. at § 7105(b)(2) ("Notices of disagreement, and appeals [to the board], must be in writing."); id. at § 7105(d)(5) ("The Board of Veterans' Appeals may dismiss any appeal which fails to allege specific error."

(emphasis added)).  To conclude that a notice of appeal to the Veterans Court is equivalent to a notice of appeal to a circuit court of appeals is to exalt semantics over substance.  See Henderson, 22 Vet. App. at 223 (Schoelen, J., dissenting) ("I do not believe the Supreme Court's use of the term 'notice of appeal' in Bowles is interchangeable with the use of the term in 38 U.S.C. § 7266(a), and I remain unconvinced that Bowles compels the result reached today."); see also King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991) ("[T]he meaning of statutory language, plain or not, depends on context.").

It should be noted, moreover, that Bowles addresses the jurisdictional magnitude of Rule 4 of the Federal Rules of Appellate Procedure.  See 551 U.S. at 208-10.  The Federal Rules of Appellate Procedure, however, "govern appeals from Article III district courts" and are "inapplicable to the [Veterans Court], an Article I Court."  Bailey, 160 F.3d at 1367; see also Oja v. Dep't of Army, 405 F.3d 1349, 1359 (Fed. Cir. 2005) (concluding that the time limit to appeal to this court from the Merit Systems Protection Board is jurisdictional because such appeals are governed by the Federal Rules of Appellate Procedure).  The Federal Rules of Appellate Procedure are "legislative in nature," Bailey, 160 F.3d at 1367, and it is therefore not surprising that the Supreme Court concluded in Bowles that Rule 4 was imbued with jurisdictional significance.

B.  The Brockamp Factors

The Supreme Court has identified several factors as important in determining whether Congress intended equitable tolling to apply to a particular statutory time limit: (1) whether the language setting forth the time limit is unusually detailed or technical in nature, (2) whether a statute contains multiple iterations of the limitations period, (3)

whether a timing provision contains explicit exceptions to the filing deadline, and (4) the underlying subject matter of the statutory scheme in which the timing provision is found. See Brockamp, 519 U.S. at 350-53; Kirkendall v. Dep't of Army, 479 F.3d 830, 836-37 (Fed. Cir. 2007) (en banc). Here, each of these factors strongly supports the conclusion that Congress intended for equitable tolling to apply to the limitations period contained in section 7266(a).

Section 7266(a)'s filing deadline is set forth in simple terms, eschewing the use of technical jargon to set forth the limitations period. See Brockamp, 519 U.S. at 350 ("Ordinarily limitations statutes use fairly simple language, which one can often plausibly read as containing an implied 'equitable tolling' exception."); Arctic Slope Native Ass'n, 2009 U.S. App. LEXIS 21361, at *32-38 (concluding that the time for presenting a claim under the Contracts Disputes Act was subject to equitable tolling since the applicable timing provision was expressed in simple, non-technical language). Nor does section 7266(a) contain multiple iterations of the filing deadline. Cf. Brockamp, 519 U.S. at 350-51 (concluding that the time limit for seeking a tax refund was not subject to equitable exceptions where the statute "reiterate[d] its limitations several times in several different ways").

Moreover, section 7266(a) does not contain explicit exceptions to the time to file requirements. Applying the maxim expressio unius est exclusio alterius, the Supreme Court has made clear that the "explicit listing of exceptions" to the running of the limitations period must be considered by courts to be indicative of Congress' intent to preclude them from "read[ing] other unmentioned, open-ended, equitable exceptions into the statute." Brockamp, 519 U.S. at 352 (internal quotation marks omitted). In

<u>Bowles</u>, the statute at issue already contained an explicit exception to the time to file requirements, allowing a district court to extend the filing period for fourteen days beyond the thirty-day period allotted to appeal a district court's final judgment. <u>See</u> 28 U.S.C. § 2107(c). Here, in contrast, section 7266(a) "does not provide its own exceptions to the general rule" regarding when an action must be filed. <u>Bailey</u>, 160 F.3d at 1365; <u>see</u> <u>Arctic Slope Native Ass'n</u>, 2009 U.S. App. LEXIS 21361, at *32-38 (concluding that equitable tolling applies to a Contract Disputes Act timing provision which did not contain any express exceptions to the deadline for a contractor to submit claims).

By far the most important factor compelling the conclusion that equitable tolling applies to section 7266(a) is the fact that it is found in a uniquely pro-claimant adjudicatory scheme. <u>See</u> <u>Barrett v. Nicholson</u>, 466 F.3d 1038, 1044 (Fed. Cir. 2006) ("The government's interest in veterans cases is not that it shall win, but rather that justice shall be done, that all veterans so entitled receive the benefits due to them."); <u>Bailey</u>, 160 F.3d at 1370 (Michel, J., concurring) (The Veterans Court is "set in a <u>sui generis</u> adjudicative scheme for awarding benefit entitlements to a special class of citizens, those who risked harm to serve and defend their country."). The 120-day filing period must be interpreted not in a vacuum, but with a keen awareness that Congress created the Veterans Court in order "to ensure that veterans . . . receive all benefits to which they are entitled." S. Rep. No. 100-418, 100th Cong., 2d Sess. 29 (1988).[4]

---

[4] The Veteran's Court seems to have lost sight of its mandate when it took it upon itself to "overrule" <u>Bailey</u> and <u>Jaquay</u>. In eradicating equitable tolling based on <u>Bowles</u>, the Veterans Court conveniently overlooked the fact that <u>Bowles</u> did not cite to, much less overrule, any case involving section 7266(a). Indeed, even the government acknowledges that the Veterans Court acted inappropriately in failing to follow binding

Equitable tolling does not excuse tardy filing in cases of simple ineptitude or garden variety neglect, see Nelson v. Nicholson, 489 F.3d 1380, 1384 (Fed. Cir. 2007), but it is a critically important safeguard in situations where a serious mental or physical infirmity renders it impossible for a veteran to comply with a rigidly enforced filing deadline.

The impetus for the creation of the Veterans Court was Congress' abiding concern that individuals who had put their lives on the line through service in the military had no right to have their claims for disability benefits reviewed in a court of law. See, e.g., S. Rep. No. 100-418, 100th Cong., 2d Sess. 30-31 ("Under current law, a veteran . . . aggrieved by a final [board] decision is left without any further recourse. . . . This legislation is designed to ensure that all veterans are served with compassion, fairness, and efficiency, and that each individual veteran receives . . . every benefit and service to which he or she is entitled under law."); id. at 50-51 ("[T]he committee continues to believe that providing an opportunity for those aggrieved by VA decisions to have such decisions reviewed by a court, in a manner similar to that enjoyed by claimants before almost all other Federal agencies, is necessary in order to provide such claimants with fundamental justice. . . . [J]udicial review, by opening the decisions of the VA to court scrutiny, will have a salutary effect on such decisions and on the VA decisionmaking process in general by involving the judiciary as a check on agency actions."). Given Congress' clearly expressed desire to provide veterans with access to the judicial system, interpreting section 7266(a) in a way that will deprive those who are incapable of meeting rigidly enforced deadlines of the right to judicial review is "as unsupportable as it is counterintuitive." Barnhart v. Peabody Coal Co., 537 U.S. 149, 158 (2002)

precedent of this court on the question of whether equitable tolling applies in Veterans Court proceedings.

(concluding that time limits specified in the Coal Industry Retiree Health Benefit Act of 1992 should not be construed in a way that might deprive compensation to the intended beneficiaries of the statute).

When it established the Veterans Court, Congress made clear that proceedings before the court were not to be overly "formalized," but instead were to be "[a]ccurate, informal, efficient, and fair." H.R. Rep. No. 100-963, 100th Cong., 2d Sess. 26 (1988). By eradicating equitable tolling, the majority creates a harsh and formalistic adjudicatory scheme that is the antithesis of what Congress intended. See Forshey, 284 F.3d at 1360 (Mayer, C.J., dissenting) ("Viewed in its entirety, the veterans' system is constructed as the antithesis of an adversarial, formalistic dispute resolving apparatus.").

The majority's approach to equitable tolling is particularly indefensible given that most veterans act pro se when they file their petitions for review in the Veterans Court. See U.S. Court of Appeals for Veterans Claims Annual Report (2008), available at http//www.uscourts.cavc.gov/documents/Annual_Report_-_20081.pdf. The Supreme Court has cautioned that a strict reading of a filing provision is especially "inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 397 (1982) (internal quotation marks omitted). Because so many veterans must file their petitions without the assistance of counsel, it is highly unlikely that Congress intended for section 7266(a) to serve as a harsh and inflexible jurisdictional bar.

To the contrary, Congress has given every indication that it sanctions equitable tolling in proceedings before the Veterans Court. In 1998, Bailey held that section

7266(a) was subject to equitable tolling. 160 F.3d at 1364-68. In the eleven years since Bailey, Congress has had ample opportunity to overturn the application of tolling in Veterans Court proceedings, but has declined to do so. Instead, in 2000, Congress enacted comprehensive revisions to the veterans' benefits system, see Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096, but did nothing to eliminate or circumscribe equitable tolling at the Veterans Court. In 2001, Congress specifically reviewed and then amended section 7266, repealing a provision that required a veteran to serve a notice of appeal on the Veterans Administration. See Veterans Education and Benefits Expansion Act of 2001, Pub. L. No. 107-103, § 507, 115 Stat. 976, 999. Again, however, Congress chose not to disturb established equitable tolling jurisprudence. Under such circumstances, it is reasonable to assume that Congress agrees with equitable tolling in Veterans Court proceedings. See Cannon v. Univ. of Chicago, 441 U.S. 677, 699 (1979) ("[I]t is not only appropriate but also realistic to presume that Congress [is] thoroughly familiar" with important court decisions when it enacts legislation.); Jacobs v. Nat'l Drug Intelligence Ctr., 548 F.3d 375, 378 (5th Cir. 1978) ("Congress is presumed to be aware of court decisions construing statutes and may, of course, amend a statute as a result.").

Statistics from the Veterans Court make clear that the elimination of equitable tolling will deal a heavy blow to many deserving veterans. In 2008, the Veterans Court heard 3,542 appeals on the merits and reversed, vacated or remanded 2,184 of the board's decisions. See U.S. Court of Appeals for Veterans Claims Annual Report (2008), available at http://www.uscourts.cavc.gov/documents/Annual_Report_-_20081. pdf. Thus, veterans often mount successful challenges to adverse board decisions

when they come before the Veterans Court. With the eradication of equitable tolling, many deserving veterans will be deprived of the right to have an erroneous board decision corrected on appeal. See Br. of Amicus Curiae United Spinal Assoc. at 14 (noting that since the Veterans Court abolished equitable tolling "it has dismissed over 130 appeals based on the inability of claimants to meet the filing requirements of § 7266, an average of over two dismissals a week").

While the abolition of equitable tolling will prove calamitous for many severely disabled veterans, its continuance would result in no prejudice to the government. All factual information must be presented during earlier proceedings, so a delay in bringing an action in Veterans Court will not hinder the government's ability to obtain evidence or present its case. Bailey, 160 F.3d at 1365 (Since section 7266(a) "addresses timeliness for an appeal from a closed record," the application of equitable tolling "does not threaten administrative complexity or unpredictable fiscal peril."). And because it often takes many years—in some cases several decades—to obtain service-connected benefits, the government is hardly in a position to complain that equitable tolling will result in inordinate delays. See James Dao, "Veterans Affairs Faces Surge of Disability Claims," N.Y. Times, July 12, 2009 (noting that the backlog of claims seeking service-connected benefits is now over 400,000); Comer v. Peake, 552 F.3d 1362, 1365-71 (Fed. Cir. 2009) (summarizing the hurdles faced by a mentally disabled veteran in his twenty-year struggle to obtain disability compensation).

This court often pays lip-service to "the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." See King, 502 U.S. at 220 n.9; Brown v. Gardner, 513 U.S. 115, 118 (1994). In reality,

however, it not infrequently fails in its "fundamental obligation to apply the law, when the issue is an open one, in favor of the veteran." Schism v. United States, 316 F.3d 1259, 1311 (Fed. Cir. 2002) (Plager, J., dissenting). Even if this were a close case, which it is not, we would be obliged to resolve any interpretive doubt regarding whether equitable tolling applies to section 7266 in the veteran's favor. Cf. Kirkendall, 479 F.3d at 843.

IV.

Four justices of the Supreme Court thought the result in Bowles was fundamentally unfair. See 551 U.S. at 215 (Souter, J., joined by Stevens, Ginsburg and Breyer, JJ., dissenting) ("It is intolerable for the judicial system to treat people this way."). The facts here are far more compelling. Bowles was a convicted murderer, and had a jury trial, a direct appeal and a federal district court review of his habeas corpus application. His untimely filing resulted only in the loss of the right to have the denial of his habeas petition reviewed by an appellate court.

Henderson was discharged from active military duty due to service-connected paranoid schizophrenia. His psychiatrist reports that he is "incapable of rational thought or deliberate decision-making" and "incapable of understanding and meeting deadlines." A1028. Acting pro se, Henderson filed an action challenging the board's decision denying him monthly compensation for at-home care, but his complaint was dismissed because it was filed a mere fifteen days outside the 120-day filing period specified in section 7266(a). Because the majority has seen fit to renounce equitable tolling, Henderson will be deprived of all right to judicial review of his claim. So while Bowles, a convicted murderer, had several opportunities to present his case in a court of law, Henderson will have none.

The majority does not dispute that Henderson's mental illness rendered him incapable of meeting section 7266(a)'s filing deadline. Nor can it dispute that <u>Bowles</u> does not mention, much less explicitly overrule, this court's well-established precedent applying equitable tolling in proceedings before the Veterans Court. Yet the majority construes <u>Bowles</u> in a way that will deprive many deserving veterans of all right to judicial review. But "[o]ur Nation has a long tradition of according leniency to veterans in recognition of their service . . . ." <u>Porter v. McCollum</u>, No. 08-10537, 2009 U.S. LEXIS 8377, at *22-23 (U.S. Nov. 30, 2009). Eliminating equitable tolling deprives deserving veterans of the leniency they are due and makes a mockery of the pro-claimant adjudicatory system Congress intended to create. Those "who have been obliged to drop their own affairs to take up the burdens of the nation" through service in the military, <u>Boone v. Lightner</u>, 319 U.S. 561, 575 (1943), deserve far better.